993 So.2d 1047 (2008)
Dave B. MILTON, Appellant,
v.
STATE of Florida, Appellee.
No. 1D06-1384.
District Court of Appeal of Florida, First District.
February 28, 2008.
Clarification Granted March 27, 2008.
Robert Augustus Harper, Jr., Robert Augustus Harper, III, and Jonathan M. Kester, Harper & Harper Law Firm, P.A., Tallahassee, for Appellant.
Bill McCollum, Attorney General, Christine Ann Guard and Giselle Lylen Rivera, Assistant Attorneys General, Tallahassee, for Appellee.
VAN NORTWICK, J.
Dave B. Milton appeals his conviction for trafficking cocaine. Because we conclude that the procedure utilized in questioning a prosecution witness violated Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), we reverse and remand for further proceedings consistent with this opinion.
On June 10, 2004, Milton was the passenger in a car which was involved in a high-speed chase that ended when the driver, Delton Harrison, crashed into a tree. After the crash, police discovered cocaine in the vehicle. Milton was charged with trafficking over 28 grams of cocaine.
The first trial took place on April 27, 2005. Milton and Harrison were tried jointly. Throughout the trial, Milton's and Harrison's attorneys warned of the possibility of running afoul of Bruton, which holds that the admission of a codefendant's confession which implicates the defendant at a joint trial constitutes prejudicial error. During the trial, the State questioned an officer, Laursen, about Harrison. Officer Laursen testified that Harrison told him he was the driver of the vehicle when it crashed. Milton's counsel objected to the entry of all statements made by Harrison. The objection was overruled. Officer Laursen then continued to testify that Harrison reported that he was driving because Milton was intoxicated. Milton's *1048 counsel renewed his objection and, based on the prior suppression order, moved for a mistrial. In further argument, Milton's counsel recognized that he might be a "tad premature" in moving for a mistrial but that it was "pretty obvious where we're headed with the next question and next answer." The court stated that if Milton had requested a severance, it would have granted it, but as he did not, the court felt that the suppressed evidence could possibly be brought in, which could lead to a Bruton violation and deny Milton the opportunity for a fair trial. Accordingly, the court declared a mistrial.
After the mistrial was declared, Harrison pled no contest to one count of felony fleeing and attempting to elude officers and, as part of a plea agreement, the State nolle prosed Harrison's trafficking charges. It appears from the record that the agreement between the State and Harrison did not require Harrison to testify against Milton.
At the second trial of Milton, the State called Harrison to testify, even though, prior to the second trial, Harrison had repeatedly stated that he would not testify at Milton's retrial, and he had refused to testify at a deposition. At retrial, Harrison sought to invoke his Fifth Amendment privilege not to testify, but the trial court rejected this argument on the ground that, because Harrison had already been sentenced, he could not refuse to testify. The trial court requested a proffer of his testimony, but Harrison refused to testify. The trial court threatened to hold him in contempt unless he answered the State's questions. Milton repeatedly objected to the calling of Harrison as a witness, arguing that the State was creating a Bruton violation because Milton was unable to cross-examine Harrison; therefore, this witness was essentially unavailable. The trial court ruled that Harrison was available for purposes of the Confrontation Clause, even though he continued to refuse to answer questions.
In its examination of Harrison, the State sought to question him about statements he made to Officer Laursen. The prosecutor asked Harrison "[w]hen Investigator Jason Laursen asked you why you did not stop the car, did you tell him that Dave Milton told you we can't stop?" Harrison answered, "for the record, I am through with it." The State then asked Harrison if he shook his head "yes" when Officer Laursen asked him if the reason he did not stop was because of all the drugs in the car. Harrison again answered "for the record, I am through with it." The State continued by asking if any of the drugs in the car were his, and Harrison's reply was the same. The only question Milton's counsel asked during cross-examination was whether Harrison was going to continue to refuse to answer all questions, and the witness responded in the affirmative. At the conclusion of the trial, the jury found Milton guilty as charged, and the trial court sentenced him to ten years in prison.
On appeal, Milton argues, among other things, that the trial court committed reversible error by allowing the jury to consider as evidence the content of the State's questions to Harrison. Because the State was allowed to pose questions to Harrison with no expectation of answers, Milton asserts that this procedure denied him his constitutional right to confrontation under Bruton since the witness could not be cross-examined. In considering a trial court's ruling on admissibility of evidence over an objection based on the Confrontation Clause, our standard of review is de novo. Hernandez v. State, 946 So.2d 1270 (Fla. 2d DCA 2007).
The United States Supreme Court has held that a defendant's inability to crossexamine *1049 a witness constitutes a denial of his constitutional right to confront witnesses. Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). In Douglas, a witness, who had been convicted for the same crime as the defendant and who refused to answer any questions based on his constitutional privilege against self-incrimination, was asked about his alleged confession which had implicated the defendant. The confession was read by the State to the jury under the guise of cross-examination, after the witness had asserted his Fifth Amendment right against self-incrimination. In reversing the conviction, the Supreme Court explained:

Although the Solicitor's reading of [the witness'] alleged statement, and [the witness'] refusals to answer, were not technically testimony, the Solicitor's reading may well have been the equivalent in the jury's mind of testimony that [the witness] in fact made the statement; and [the witness'] reliance upon the privilege created a situation in which the jury might improperly infer both that the statement had been made and that it was true. [Citation omitted.] Since the Solicitor was not a witness, the inference from his reading that [the witness] made the statement could not be tested by cross-examination.
* * *
[The] effective confrontation of [the witness] was possible only if [he] affirmed the statement as his. However, [the witness] did not do so, but relied on his privilege to refuse to answer. We need not decide whether [he] properly invoked the privilege in light of his conviction. It is sufficient for the purposes of deciding petitioner's claim under the Confrontation Clause that no suggestion is made that [his] refusal to answer was procured by the petitioner.... This case cannot be characterized as one where the prejudice in the denial of the right cross-examination constituted a mere minor lapse. The alleged statements clearly bore on a fundamental part of the State's case against the petitioner. The circumstances are therefore such that inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant.
Douglas, 380 U.S. at 419-420, 85 S.Ct. at 1077 (emphasis added); see also Bruton, 391 U.S. at 127, 88 S.Ct. at 1623. In Hall v. State, 381 So.2d 683, 687 (Fla.1978), the Florida Supreme Court explained that:
The fact that the defendants here were tried separately rather than jointly does not vitiate the Constitutional infirmity [of admitting the statements of a non-testimonial codefendant without allowing the defendant to cross-examine him]. The crux of a Bruton violation is the introduction of statements which incriminate an accused without affording him an opportunity to cross-examine the declarant.

(Emphasis added); see also Ramirez v. State, 739 So.2d 568, 579 (Fla.1999)(explaining that it is error to admit the details of a non-testifying co-defendant's confession and that a codefendant's statements "are especially suspect because he has a strong motive to implicate another").
It seems clear from the record that, in the case before us, the State sought to introduce Harrison's statements incriminating Milton knowing that the witness would invoke his right not to answer, thereby creating the impression for the jury that there was incriminating evidence as to Milton. Milton was not able to overcome this impression through cross-examination, as Harrison refused to testify.
We find Hill v. State, 330 So.2d 487 (Fla. 4th DCA 1976), persuasive. In Hill, prior to the defendant's trial the State was put on notice that its witness, a previously *1050 acquitted codefendant, would refuse to testify. The State called him to testify anyway, and the witness refused to answer questions. Because the witness continued to refuse to testify on Fifth Amendment grounds, the State sought to "refresh" his memory by playing a tape-recorded conversation he had with the State Attorney, which implicated not only himself, but the defendant as well. The witness still refused to comment. The appellate court held that it was a violation of the Confrontation Clause for the jury to hear the witness' extrajudicial statement inculpating the defendant. Id. at 488.
In the case before us, as in Douglas and Hill, Milton was denied the opportunity to cross-examine the witness because he refused to testify. In Bruton, the Supreme Court held that the right of cross-examination is included in the right of an accused in a criminal case to confront witnesses against him. Bruton, 391 U.S. at 126, 88 S.Ct. at 1623. Here, despite the State's knowledge that the witness would refuse to testify, it tried to create the impression for the jury that there was incriminating evidence against Milton, and he was unable to counter that impression because Harrison was unwilling to testify. Accordingly, we hold that Milton's constitutional right to confront witnesses was violated, and this case is reversed for a new trial. We find no merit in Milton's arguments concerning double jeopardy, the denial of his motion for judgment of acquittal, or the denial of his special requested jury instruction.
REVERSED and REMANDED for further proceedings consistent with this opinion.
KAHN and BENTON, JJ., concur.