IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

CELESTE CHAMBERS,

     Appellant,

v.

STATE OF FLORIDA,

     Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-3135

Opinion filed October 4, 2016.

An appeal from the Circuit Court for Leon County.
William L. Gary, Judge.

Nancy A. Daniels, Public Defender, and Susannah C. Loumiet, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Matthew Pavese, Assistant Attorney General, Tallahassee, for Appellee.

RAY, J.

Celeste Chambers appeals from her convictions for grand theft and trespass. We agree with two of her arguments: the trial court erred in failing to grant a motion for judgment of acquittal as to the charge of grand theft because the State's evidence was insufficient to prove the value element of that offense, and Chambers was denied her right to confront a key witness after new information surfaced on

redirect examination. As a result of these errors, we reverse both convictions and remand for a new trial on trespass and petit theft.

**Facts**

Chambers was convicted of trespass and grand theft for her role in a three-person enterprise that resulted in the taking of used fencing materials from the grounds of a Goodwill warehouse that was not open to the public. On a Sunday afternoon in November 2014, Chambers, Nichole Revis, and Caleb Clark entered a fenced area outside the warehouse where two dumpsters were located. After rummaging through the dumpsters, they took the fencing materials, which were leaning against the nearby building, twenty-five to forty feet from the dumpsters.

In a recorded police interview, Chambers characterized the group's actions as "dumpster diving." George Cox, who was dating Chambers at the time of this incident and called by the State at trial, testified that he worked at Goodwill during the time period in question. He had advised Chambers that, although Goodwill employees were not allowed to "dumpster dive," his boss had told him that if anyone did "tote[] something off, it would save the company money." He also told Chambers not to give anyone any trouble if someone tried to "run her off" from the dumpster. Cox denied giving Chambers permission to "dumpster dive."

Goodwill representatives testified that, although used, the fencing materials were in "good shape" and would have been used again by Goodwill if they had not

2

been stolen. The fencing materials had been in use inside the warehouse and had been removed and placed outside during a remodeling project. Goodwill's lead security office manager testified, based on his inquiry at Home Depot, that it would cost approximately $430 to replace the fencing materials.[1] He did not know how old they were and agreed that they had been "outside in the elements" and used before.

Nichole Revis testified under the State's subpoena with the understanding that she would receive use immunity. During the State's brief direct examination, Revis testified that she, Chambers, and Clark went to the warehouse at the suggestion of Chambers, entered the fenced area where the dumpsters were located, and took items from that area. Revis identified all three participants in the surveillance video of the relevant time and place. On cross-examination, Revis was asked two questions: whether she "believe[d] that [she] had permission to be there" and whether she thought the fence was trash when she took it. Revis answered both questions in the affirmative.

On redirect examination, Revis explained her statement that she thought she "had permission to be there." She stated that she overheard Chambers's boyfriend, George Cox, tell Chambers over speakerphone that Chambers and her friends would not get into trouble for "being there." Cox was a supervisor for the Goodwill

---

[1] No hearsay objection was raised against this testimony.

warehouse and, according to Revis, said that Chambers and her friends could "just help [them]selves" and that "he would make sure that nothing was said about it." Over objections, the State elicited testimony that additional items were taken from the building and a semi truck on the premises. The State went on to ask, "So y'all entered the warehouse?" Revis answered in the affirmative, and the defense objected to this question as beyond the scope of cross-examination. In the midst of the objection and its overruling, Revis added, "[Chambers] didn't enter the warehouse." Revis then volunteered that Chambers hurt her foot by jumping off the back of the semi. Revis further testified that, at some point, Clark took Chambers home because she had hurt her foot and had other business to attend to.

After Revis's redirect examination, defense counsel, having previously been instructed by the court that it did not allow "recrosses," asked that Revis be required to remain for the defense's case-in-chief in lieu of recross. The court said that Revis could be required to stay if the defense had subpoenaed her, which it had not. After the State rested, the issue of Revis's remaining for the defense's case was raised again. The State advised that Revis would not have use immunity for any such testimony, as she was no longer under the State's subpoena.[2] The

_____

[2] We need not decide whether the State's understanding of the limits of use immunity was correct, because it is clear that counsel would have requested recross-examination, rather than the opportunity to call Revis in the defense case-in-chief, had the court not announced a policy against recross. Revis's testimony on recross-examination would have been subject to use immunity. See § 914.04,

4

defense explained that Revis's testimony was needed to make clear for the jury that Revis acted alone when she entered the warehouse and took additional property. The court commented that the additional property was taken on a different day, a point that the defense correctly observed had not been made clear by the testimony. In fact, this point is not stated in or implied by the testimony at all. When the State suggested that Revis would simply invoke her Fifth Amendment right not to incriminate herself if she were called by the defense, the defense moved for a mistrial on the ground that Chambers was entitled to an opportunity to question Revis based on her testimony on redirect. The motion was denied.

The defense also moved for a judgment of acquittal, arguing that the State's evidence was insufficient to prove either the actual market value of the stolen fencing materials or the replacement cost. The court determined that the evidence was legally sufficient to send the charge of grand theft to the jury.

In closing, the State relied on the principal theory to explain that Chambers was responsible for the actions of Clark and Revis in taking the fencing materials, even if she did not touch all of them. The State explained that Chambers was "on the hook for everything the other people did." However, the State went on to clarify that it was not claiming that Chambers was "a principal to whatever Ms. Revis said they took after she left" and that the State was saying only that

Fla. Stat. (2015); Perez v. State, 453 So. 2d 173, 174 (Fla. 2d DCA 1984).

5

Chambers was guilty of taking the items that were shown in the surveillance video, which included only the fencing materials.

**Analysis**

On appeal, we are persuaded that the evidence was insufficient to show the value of the stolen property and that the court erred in denying Chambers an opportunity to question Revis after redirect examination. Each of these issues is addressed in turn.

<u>Sufficiency of the Evidence to Show Grand Theft</u>

A trial court's denial of a motion for judgment of acquittal is reviewed de novo to determine whether competent, substantial evidence supports the elements of the crime at issue. <u>Perez v. State</u>, 187 So. 3d 1279, 1281 (Fla. 1st DCA 2016). A judgment of acquittal is properly granted only "when the jury cannot reasonably view the evidence in any manner favorable to the opposing party." <u>Burns v. State</u>, 132 So. 3d 1238, 1240 (Fla. 1st DCA 2014) (quoting <u>Criner v. State</u>, 943 So. 2d 224, 225 (Fla. 1st DCA 2006)).

Under section 812.014(2)(c)1, Florida Statutes (2014), theft is grand theft in the third degree if the property stolen is "[v]alued at $300 or more, but less than $5,000." "Value" is defined as "the market value of the property at the time and place of the offense or, if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the offense." §

6

812.012(10)(a)1, Fla. Stat. (2014). For a defendant to be convicted of grand theft, the value of stolen property must be proved beyond a reasonable doubt. S.M.M. v. State, 569 So. 2d 1339, 1340 (Fla. 1st DCA 1990).

Chambers argues that the State failed to present evidence of market value and failed to show that market value could not be satisfactorily ascertained so as to be entitled to rely on replacement value. We agree that the State did not present evidence of the fencing materials' market value, and the State does not contend otherwise. We need not decide whether the State was entitled to rely on replacement value, a question that arguably was not preserved, because we agree with an additional point raised by the defense, that the State's evidence of replacement value was legally insufficient to establish that value.

As the Second District has explained, "replacement value means replacement with like property that is similar in value to the item stolen at the time of the taking." Newland v. State, 117 So. 3d 482, 484 (Fla. 2d DCA 2013) (citing Ramos v. State, 864 So. 2d 1250, 1252 (Fla. 5th DCA 2004), and Doane v. State, 847 So. 2d 1015, 1017-18 (Fla. 5th DCA 2003)). When a stolen item was in substantially used condition at the time of the theft, evidence of the cost of a new item is insufficient to show replacement value. See Newland, 117 So. 3d at 484 (holding that evidence of the cost of a new air conditioning unit was insufficient to show the replacement value of a unit that was one to two years old). Here, the State

presented evidence of the cost to purchase new fencing materials from Home Depot, not the cost to purchase used materials that had been exposed to the elements outside and shown to be in similar condition to those that were taken. Because the State failed to establish the value of the stolen property, the greatest offense for which Chambers could be properly convicted was petit theft. See Carter v. State, 77 So. 3d 849, 852 (Fla. 2d DCA 2012).

Confrontation Clause

We turn now to the issue concerning the Confrontation Clause. Although a trial court generally has broad discretion in allowing or disallowing recross examination, the court's discretion "is constrained by the rules of evidence . . . and by recognition of a criminal defendant's Sixth Amendment rights." McDuffie v. State, 970 So. 2d 312, 324 (Fla. 2007). Where an appellate court reviews "a trial court's ruling on admissibility of evidence over an objection based on the Confrontation Clause, [the] standard of review is de novo." Milton v. State, 993 So. 2d 1047, 1048 (Fla. 1st DCA 2008).

The Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to be "confronted by the witnesses against him." U.S. Const. amend. VI. Under this clause, a criminal defendant "has an absolute right to full and fair cross-examination." McDuffie, 970 So. 2d at 324 (citing Steinhorst v. State, 412 So. 2d 332, 337 (Fla. 1982)). This

8

Court held in Kelly v. State, 842 So. 2d 223, 226 (Fla. 1st DCA 2003), that "when new matters are introduced during redirect examination, denying recross effectively denies the opposing party the right to any cross examination on the new matter and, thus, violates the confrontation clause." See also Bordelon v. State, 908 So. 2d 543, 546 (Fla. 1st DCA 2005) ("When new material is developed on redirect examination, recross-examination must be allowed.").

New information was produced and developed by Revis's testimony on redirect. Before the redirect examination of Revis, the jury was unaware of Revis and Clark's entry into the warehouse, the list of items stolen from inside the warehouse and from the semi, and the presence of Chambers on the back of the semi. Thus, Revis's testimony on redirect did not simply illuminate minor details of testimony previously elicited. Once this information was introduced into the trial, Chambers should have been allowed to question Revis to clarify the role, or lack thereof, that Chambers played in the theft of additional items. Although Revis stated that Chambers did not enter the warehouse, defense counsel's request to clarify this fact was reasonable, as Revis made this statement in the middle of an objection. Also, even as we read the transcript today, we cannot tell whether Revis intended to say that Chambers participated in taking items from the semi truck.

While the State made clear that it was not accusing Chambers of stealing items taken after she left, that statement fails to eliminate all doubt about potential

9

harm caused by Revis's testimony on redirect. The jury might have considered the thefts from the warehouse and the semi evidence of the criminal nature of the entire expedition to Goodwill including that part for which Chambers was present, even though further questioning could have cast the additional thefts in a different light as far as Chambers was concerned. The State and the evidence have failed to show beyond a reasonable doubt that the Court's error in preventing recross examination of Revis was a harmless error. For these reasons, the denial of Chambers's right to fully confront Revis requires a new trial.

We reverse and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

MAKAR and OSTERHAUS, JJ., CONCUR.