FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2023-1980

_____

M.L.K. III,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Leon County.
Anthony B. Miller, Judge.


August 20, 2025

NORDBY, J.

Appellant challenges the trial court's order holding him in indirect criminal contempt. Appellant contends that, at the contempt hearing, his removal from the courtroom during the testimony of an adverse witness violated his right to confrontation under the Sixth Amendment. We agree and reverse. We decline to address the other issues raised by Appellant.

I.

The trial court proceedings against Appellant began as dependency proceedings. Ultimately, the trial court terminated Appellant's parental rights to his two children. The termination

order expressly prohibited Appellant from having any contact with either child.

About a month later, the younger child alleged that Appellant had made contact. The Department of Children and Families moved for an order to show cause against Appellant for violating the no-contact provision. The trial court ultimately ordered Appellant to show cause as to why he should not be held in indirect criminal contempt. The trial court also set a hearing on the matter. The hearing notice provided that the child would testify remotely and ordered Appellant to be removed from the courtroom during the child's testimony.

Because Appellant faced criminal contempt proceedings, he was appointed counsel from the public defender's office. Right before the contempt hearing, Appellant's defense counsel objected to the child testifying remotely. He argued that defendants have a Sixth Amendment right to confront their accusers and that, absent an agreement, they must appear in person. The trial court noted the objection but ruled that Appellant would still have to leave the courtroom before the child's testimony.

The child testified remotely. And consistent with its earlier ruling, the trial court instructed Appellant to leave the courtroom. As Appellant was leaving, defense counsel renewed his objection to Appellant's removal as a violation of his confrontation rights. The trial court overruled the objection.

The child's testimony detailed an incident in which a man approached the child at a sporting event. The child believed the man was Appellant. In addition to providing specific details about the incident (and why the child identified Appellant as the man), the child testified to feeling threatened by the man's presence. Before beginning his cross-examination, defense counsel renewed the objection to Appellant's removal from the courtroom. During cross-examination, defense counsel tried to consult Appellant outside the courtroom but declared it was ineffective as Appellant did not hear "any of the testimony." Defense counsel explained, "the lack of [Appellant] being present for the [witness's] testimony, his inability to confront the witness and the limitations in the way

2

that [this] ties my hands" frustrated his ability to cross-examine the witness.

After the child's testimony, Appellant returned to the courtroom and provided his own testimony where he denied contacting the child. The court ultimately found Appellant guilty of indirect criminal contempt and imposed a one-week suspended jail sentence following six months of probation. This timely appeal follows.

## II.

We typically review a criminal contempt order for an abuse of discretion. *West v. State*, 283 So. 3d 1289, 1291 (Fla. 1st DCA 2019). That said, challenges based on the Confrontation Clause are reviewed de novo. *Calloway v. State*, 210 So. 3d 1160, 1187 (Fla. 2017); *Chambers v. State*, 200 So. 3d 242, 246 (Fla. 1st DCA 2016). We therefore review Appellant's confrontation claim de novo.

Like any criminal defendant, a person faced with criminal contempt is entitled to assert their constitutional rights.[1] *See Andrews v. Walton*, 428 So. 2d 663, 665 (Fla. 1983) ("Criminal contempt proceedings are 'effectively criminal in nature and persons accused of [criminal] contempt are as much entitled to the basic constitutional rights as are those accused of violating criminal statutes.'" (quoting *Aaron v. State*, 284 So. 2d 673, 675 (Fla. 1973))). "The right to confront adverse witnesses at trial . . . has long been secured by both the United States and Florida

_____

[1] We note that Appellant raised a similar confrontation claim in his appeal from the trial court order terminating his parental rights. This court affirmed that order, citing authority that the constitutional right to confront witnesses is not implicated in dependency or termination of parental rights proceedings as those "'are civil in nature, not criminal.'" *M.L.K. v. Dep't of Child. & Fams.*, 397 So. 3d 837, 838 (Fla. 1st DCA 2024) (quoting *S.D. v. Dep't of Child. & Fams.*, 208 So. 3d 320, 322 (Fla. 3d DCA 2017)) *petition for cert. filed*, No. 24-7481, (U.S. Mar. 3, 2025). We face no similar impediment in this appeal, as Appellant challenges a criminal contempt order.

Constitutions." *City of Tallahassee v. Fla. Police Benevolent Ass'n, Inc.*, 375 So. 3d 178, 186 (Fla. 2023).

While the United States Supreme Court has long recognized a preference for a defendant to confront an adverse witness face-to-face, this form of confrontation is not absolute. *Maryland v. Craig*, 497 U.S. 836, 849–50 (1990). We find that Court's decision in *Craig* informative as to the scope and limitation of the Confrontation Clause here. In *Craig*, the Court upheld Maryland's statutory procedure in which a child witness testified against a defendant at trial, outside the defendant's physical presence, by one-way closed circuit television. *Id.* at 851–52. While the Court acknowledged that the Sixth Amendment's Confrontation Clause reflects a preference for face-to-face confrontation at trial, it nonetheless concluded that this preference must occasionally give way to public policy considerations and the necessities of the case. *Id.* at 849–50. As the Court found, although Maryland's statutory procedure prevented a child witness from seeing the defendant as he testified, the procedure preserved all the other elements of confrontation: "The child witness must be competent to testify and must testify under oath; the defendant retains full opportunity for contemporaneous cross-examination; and the judge, jury, *and defendant are able to view (albeit by video monitor) the demeanor (and body) of the witness as he or she testifies.*" *Id.* at 851 (emphasis added). Thus, the Court concluded, the use of the one-way closed circuit television procedure, where necessary, to further an important State interest (i.e., Maryland's interest in the physical and psychological well-being of child abuse victims) did not impinge upon the Sixth Amendment's Confrontation Clause. *Id.* at 852–53.

We note that the Florida Legislature has enacted statutory guidelines for audio-video communication technology in proceedings involving minor victims or witnesses. Although section 92.54, Florida Statutes, authorizes remote testimony in certain circumstances, it still requires that a defendant retain the ability to observe and hear the testimony. Under the statute, when remote testimony is appropriate:

> [T]he court may require the defendant to view the testimony from the courtroom. In such a case, *the court*

4

*shall permit the defendant to observe and hear the testimony of the victim or witness*, but must ensure that the victim or witness cannot hear or see the defendant. The defendant's right to assistance of counsel, which includes the right to immediate and direct communication with counsel conducting cross-examination, must be protected and, upon the defendant's request, such communication must be provided by any appropriate electronic method.

§ 92.54(4), Fla. Stat. (2022) (emphasis added).

On the record before us, the trial court's decision to remove Appellant did not conform to the standards in *Craig* or adhere to the procedure prescribed under section 92.54. The trial court ordered Appellant out of the courtroom before the testimony of the minor witness. ("I'll wait until [Appellant] leaves and then we'll get started."). Appellant was not permitted to observe or hear the testimony of the minor witness. ("I did go out and speak to [Appellant]. With him not having heard any of the testimony, basically it's little to no help to talk to him."). The record is also clear that Appellant was deprived of his right to immediate and direct communication with his counsel during the testimony. ("Judge, I'd ask for a moment to step out to try and talk to [Appellant]. It's going to be kind of limited.").

Florida courts "have repeatedly recognized the critical importance of a defendant's 'constitutional right to confront and cross-examine witnesses against him.'" *Conner v.* State, 748 So. 2d 950, 955 (Fla. 1999) (quoting *Brown v. State*, 471 So. 2d 6, 7 (Fla. 1985)). While remote witness testimony is permitted in certain situations (under *Craig* and section 92.54, Florida Statutes), the defendant must still be able to observe the witness's testimony and communicate freely with counsel. Removing Appellant from the courtroom and providing him no means to observe and hear the testimony or have direct and immediate contact with his attorney during that testimony denied Appellant the ability to meaningfully confront the adverse witness in his criminal contempt proceeding.

5

III.

We conclude that the trial court's removal of Appellant from the courtroom deprived Appellant of his confrontation rights.[2] We reverse the trial court's contempt order and remand.

REVERSED and REMANDED.

KELSEY, J., concurs; WINOKUR, J., concurs with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

WINOKUR, J., concurring.

I concur in the majority's decision to reverse. But because the opinion relies so heavily on *Maryland v. Craig*, 497 U.S. 836 (1990), I write separately to address the tension between *Craig* and *Crawford v. Washington*, 541 U.S. 36 (2004). *See, e.g., Finley v. State*, 707 S.W.3d 320, 330 n.21 (Tex. Crim. App. 2024) (referring to the "icy relationship" between *Craig* and *Crawford*).

In *Craig*, the Supreme Court "held that a child victim in a child-abuse prosecution could testify outside the presence of the defendant without violating the Confrontation Clause when a proper finding of emotional necessity was made, and the child

---

[2] Of course, the Sixth Amendment's privilege to confront adverse witnesses remains contingent upon the courtroom behavior of the defendant. *See Illinois v. Allen*, 397 U.S. 337, 343 (1970) ("[A] defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.").

6

testified under oath, underwent a full cross-examination, and was observable by the judge, jury, and defendant." *H.M.M. by Next Friend C.M. v. J.S.*, No. 367586, 2024 WL 4819887, at *5 (Mich. Ct. App. Nov. 18, 2024) (citing *Craig*, 497 U.S. at 857–58). *Craig* relied in part on the Court's prior decision in *Ohio v. Roberts*, 448 U.S. 56 (1980). *See, e.g., Craig*, 497 U.S. at 846–47. *Roberts* had held that the "indicia of reliability" of certain hearsay evidence was important in determining whether hearsay evidence was admissible under the Confrontation Clause:

> [W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Roberts*, 448 U.S. at 66, *overruled in part by Crawford*, 541 U.S. at 68. Put another way, "the [*Roberts*] Court held that the Confrontation Clause is satisfied even if a hearsay declarant is not present for cross-examination at trial as long as the statement bears adequate 'indicia of reliability.'" *People v. Jemison*, 952 N.W.2d 394, 395 (Mich. 2020).

In his dissenting opinion in *Craig*, Justice Scalia criticized the majority's reliance on *Roberts*. *See Craig*, 497 U.S. at 863 (Scalia, J., dissenting). Justice Scalia noted that "[t]he purpose of enshrining [the Confrontation Clause] in the Constitution was to assure that none of the many policy interests from time to time pursued by statutory law could overcome a defendant's right to face his or her accusers in court." *Id.* at 861 (Scalia, J., dissenting). Hence, a judicial determination regarding the "reliability of evidence," according to Justice Scalia, is no substitute for what the Confrontation Clause "explicitly provides for—'face-to-face' confrontation[.]" *Id.* at 862 (Scalia, J., dissenting).

In *Crawford*, Justice Scalia authored the Court's majority opinion, which overruled *Roberts* and held that "[w]here

testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford*, 541 U.S. at 68–69; *see also Blanton v. State*, 978 So. 2d 149, 154 (Fla. 2008) ("In *Crawford*, the Supreme Court dispensed with the *Roberts* reliability analysis for testimonial hearsay statements[.]").

Although *Crawford* overruled *Roberts*, it did not address the continued viability of *Craig*, in spite of its reliance on *Roberts*. *See Finley*, 707 S.W.3d at 330 n.21 ("The United States Supreme Court has not shed light on whether *Crawford* implicitly overruled *Craig*, or whether the two cases coexist in that *Craig* applies to in-person testimony and *Crawford* applies to out-of-court testimonial statements."); *see also Lopez v. State*, 397 So. 3d 1035, 1040 (Fla. 4th DCA 2024) (Artau, J., concurring specially) ("In overruling *Roberts*, the Supreme Court, however, did not expressly address *Craig*.").

Nevertheless, *Crawford* overruled *Roberts*—the foundation for the decision in *Craig*. *See Faughn v. Commonwealth*, 694 S.W.3d 339, 346 (Ky. 2024) (expressing "skepticism as to the continuing validity of the U.S. Supreme Court's opinion in *Maryland v. Craig* in light of the demise of the balancing test set forth in *Ohio v. Roberts*, which served as the analytical foundation of *Craig*."). *See also State v. Contreras*, 979 So. 2d 896, 906 (Fla. 2008) (discussing the continued viability of *Craig* in light of *Crawford*); *Jemison*, 952 N.W.2d at 395–96 (noting that *Crawford* "overruled *Roberts* and shifted from a reliability focus to a bright-line rule requiring a face-to-face encounter for testimonial evidence" and that "*Crawford* did not specifically overrule *Craig*, but it took out its legs."); *Ex parte Bragg*, 390 So. 3d 594, 595 (Ala. 2023) (Parker, C.J., concurring specially) (discussing the "incompatibility" of *Craig's* "balancing approach" with *Crawford's* "textual-historical approach").

That said, we do not, today, need to determine whether *Crawford* implicitly overruled *Craig*. Nor do we need to decide whether *Crawford* applies to out-of-court testimonial statements with *Craig* still applying to in-person testimony. Because the trial court removed Appellant from the courtroom during the testimony of an adverse witness (without any finding of misconduct), the trial

court violated Appellant's constitutional right to confront the witnesses against him. So, even if *Craig* survives *Crawford* intact, the trial court committed reversible error.

---

Jessica J. Yeary, Public Defender, and Justin Foster Karpf, Assistant Public Defender, Tallahassee, for Appellant.

Sarah J. Rumph, Appellate Counsel, Department of Children and Families, Tallahassee; Sara E. Goldfarb, Statewide Director of Appeals, and Justin R. Ravelo, Statewide Guardian ad Litem Office, Tallahassee, for Appellee.