580 So.2d 605 (1991)
McArthur BREEDLOVE, Appellant,
v.
STATE of Florida, Appellee.
No. 75599.
Supreme Court of Florida.
May 9, 1991.
Rehearing Denied June 25, 1991.
Bennett H. Brummer, Public Defender and Elliot H. Scherker, Assistant Public Defender, Eleventh Judicial Circuit, Miami, for appellant.
Robert A. Butterworth and Ralph Barreira, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
McArthur Breedlove appeals the denial of his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.; Fla.R.Crim.P. 3.850. We hold that the trial court did not err in *606 refusing to conduct an evidentiary hearing and affirm the denial of relief.
In 1979 a jury convicted Breedlove of killing a man during a residential burglary and recommended that he be sentenced to death, which the trial court did. At trial Breedlove moved to suppress statements he made to detectives Ojeda and Zatrepalek on November 9, 1978 and to Zatrepalek on November 21, claiming that he had been beaten on the 9th and threatened with another beating on the 21st. The trial court held a hearing on the motion to suppress and found that Breedlove had confessed freely and voluntarily. This Court affirmed Breedlove's conviction and sentence in March 1982. Breedlove v. State, 413 So.2d 1 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982).
In July 1981 the federal government indicted Ojeda and several other police officers for violating the federal racketeering influenced and corrupt organizations statute. Zatrepalek, in exchange for a bargained guilty plea and a promise of immunity, testified against his fellow officers at their 1982 trial.[1] Breedlove filed this 3.850 motion late in 1982, claiming in the second issue[2] that Ojeda and Zatrepalek had been involved in a drug conspiracy and had used cocaine themselves, that their illegal activities could have been used to impeach their testimony, and that the prosecution's failure to disclose this evidence violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). After the governor signed Breedlove's death warrant in 1983, the trial court stayed his execution pending resolution of the 3.850 motion.
Between 1984 and 1989 the prosecution received and turned over to the trial court numerous confidential police files dealing with an internal affairs investigation of several police officers. The court inspected the confidential files and, in January 1990, denied the 3.850 motion without an evidentiary hearing. The trial court did not let Breedlove see those files, but, after oral argument, this Court allowed him access to them. Both sides have now filed supplemental briefs.
In Brady the Court stated that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196-97. To demonstrate a Brady violation, a defendant must show "(1) that the prosecution suppressed evidence (2) that was favorable to him or exulpatory and (3) that the evidence was material." Delap v. Dugger, 890 F.2d 285, 298 (11th Cir.1989) (emphasis added), cert. denied, ___ U.S. ___, 110 S.Ct. 2628, 110 L.Ed.2d 648 (1990). "Impeachment evidence, ... as well as exculpatory evidence, falls within the Brady rule." United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985).
Breedlove alleges that (1) Zatrepalek and Ojeda knew of their own criminal activities; (2) an assistant state attorney and a police officer knew of Ojeda's using cocaine; and (3) Zatrepalek and Ojeda knew that they were being investigated by the internal affairs division. According to Breedlove, knowledge of this information should be imputed to the prosecution, which should be found to have suppressed the information. We agree with the trial court that an evidentiary hearing is not required because, even if assumed to be true, the facts alleged do not form a basis for relief.
This Court has previously stated that "the state may not withhold favorable evidence in the hands of the police, who work closely with the prosecutor." Arango v. State, 467 So.2d 692, 693 (Fla.), vacated on other grounds, 474 U.S. 806, 106 S.Ct. 41, 88 L.Ed.2d 34 (1985). The detectives' personal knowledge of their criminal *607 activities, however, was not readily available to the prosecution. Their right not to incriminate themselves protected them from having to disclose their actions to the prosecution. See Wallace v. State, 41 Fla. 547, 26 So. 713 (1899). Thus, the prosecution cannot be held to have had constructive notice of the detectives' crimes.
The same holds true for Breedlove's claims that an assistant state attorney and a police officer asserted that they had seen Ojeda using cocaine and that Ojeda and Zatrepalek must have known that they were being investigated by internal affairs. As noted by the trial court, the internal review files do not support the prosecution's having any knowledge of the detectives' criminal activities at the time of Breedlove's trial. Furthermore, at Ojeda's trial Zatrepalek testified that he did not know he was being investigated until November 1979, well after Breedlove's trial,[3] and an informant who testified that Ojeda knew of an investigation could not say when Ojeda acquired that knowledge. Again, as noted by the trial court, the confidential internal review files do not show that Zatrepalek and Ojeda were being investigated at the time of Breedlove's trial.
Thus, there is no support for Breedlove's claim that the prosecution knew, either actively or constructively, of Ojeda and Zatrepalek's criminal activities. This Court has repeatedly observed that "`[i]n the absence of actual suppression of evidence favorable to an accused ... the state does not violate due process in denying discovery.'" Delap v. State, 505 So.2d 1321, 1323 (Fla. 1987) (quoting James v. State, 453 So.2d 786, 790 (Fla.), cert. denied, 469 U.S. 1098, 105 S.Ct. 608, 83 L.Ed.2d 717 (1984)). Breedlove has not met the first part of the Brady rule because he has not demonstrated that the prosecution "suppressed" evidence.
Even if we were to assume that the prosecution had knowledge of these facts and failed to disclose them, we would find that Breedlove has not established a Brady violation. Brady states that suppressed evidence must be "material." 373 U.S. at 87, 83 S.Ct. at 1196-97. Since Brady, the Court has discussed materiality several times: "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish `materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976) (emphasis added). Therefore, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682, 105 S.Ct. at 3383 (emphasis added). The Court defined "reasonable probability" in Bagley as "a probability sufficient to undermine confidence in the outcome." Id.
Breedlove argues that evidence of the detectives' criminal activities could have been used to show their bias in testifying for the prosecution in order to gain more favorable treatment if and when the state proceeded against them. According to Breedlove, therefore, evidence that they were committing crimes and were being investigated was both admissible and material. We, however, agree with the trial court's conclusion that there is no reasonable probability that evidence of the detectives' criminal activities would have changed the outcome of Breedlove's trial because such evidence would not have been admissible and, therefore, is not "material." See Delap, 890 F.2d at 298-99.
A witness can be impeached by, among other things, showing that the witness is biased or by proving that the witness has been convicted of a crime.[4] §§ 90.608(1)(b), 90.610(1), Fla. Stat. (1989). While defense witnesses may be impeached only by proof of convictions, the rule regarding prosecution witnesses has been expanded. Thus, *608 this Court has stated: "`[I]t is clear that if a witness for the State were presently or recently under actual or threatened criminal charges or investigation leading to such criminal charges, a person against whom such witness testifies in a criminal case has an absolute right to bring those circumstances out on cross-examination[.]'" Fulton v. State, 335 So.2d 280, 283-84 (Fla. 1976) (quoting Morrell v. State, 297 So.2d 579, 580 (Fla. 1st DCA 1974)). The Morrell court explained that such expansion is needed.
so that the jury will be fully apprised as to the witness' possible motive or self-interest with respect to the testimony he gives. Testimony given in a criminal case by a witness who himself is under actual or threatened criminal investigation or charges may well be biased in favor of the State without the knowledge of such bias by the police or prosecutor because the witness may seek to curry their favor with respect to his own legal difficulties by furnishing biased testimony favorable to the State.
The constitutional right to confront one's accuser is meaningless if a person charged with wrongdoing is not afforded the opportunity to make a record from which he could argue to the jury that the evidence against him comes from witnesses whose credibility is suspect because they themselves may be subjected to criminal charges if they fail to "cooperate" with the authorities.
297 So.2d at 580.
This reasoning has been generally accepted when a state witness has been charged with a crime. E.g., Torres-Arboledo v. State, 524 So.2d 403, 408 (Fla.) ("When charges are pending against a prosecution witness at the time he testifies, the defense is entitled to bring this fact to the jury's attention to show bias, motive or self-interest."), cert. denied, 488 U.S. 901, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988). This is so because pending felony charges are a matter of public record and questions as to the existence of such charges "do not necessarily tend to incriminate the witness," thereby triggering the witness' right against self-incrimination.[5]Lee v. State, 318 So.2d 431, 433 (Fla. 4th DCA 1975).
If a state witness is merely under investigation, however, the ability to cross-examine on such investigation is not absolute. Instead, any criminal investigation must not be too remote in time and must be related to the case at hand to be relevant. See Wallace. Thus, Mendez v. State, 412 So.2d 965 (Fla. 2d DCA 1982), reversed a conviction of attempted second-degree murder of a policeman where the officer victim/witness had been the subject of numerous internal investigations, and had been suspended, for beating a suspect, for stealing a gun from another officer, and for pulling a revolver on a student who committed a traffic infraction. The district court correctly concluded that the officer's prior use of excessive force was relevant to his bias and motive for testifying and that the jury should have been made aware of his past conduct. Similarly, the third district found error in a trial court's refusal to allow a defendant charged with aggravated assault and resisting arrest to question the officer-witnesses about an internal investigation of allegations of police brutality which arose from the same incident as the defendant's criminal charges because that evidence was relevant to the witnesses' bias or prejudice. Lutherman v. State, 348 So.2d 624 (Fla. 3d DCA 1977). In Stripling v. State, 349 So.2d 187 (Fla. 3d DCA 1977), cert. denied, 359 So.2d 1220 (Fla. 1978), the district court held that a defendant charged with bribery and conspiracy to bribe a police officer should have been allowed to inform the jury that the state's key witness, an officer, was being investigated for soliciting bribes. Even though the state dropped an investigation of an officer for unrelated conduct, a district court found not allowing questioning on the matter error because the investigation was dropped in exchange for the officer's testimony in the case at bar. Sarmiento v. State, 371 So.2d 1047 (Fla. 3d DCA 1979), approved on other grounds, 397 So.2d 643 (Fla. 1981).
*609 In the above-mentioned cases the prosecution witnesses' conduct was related to the charges against the defendants sufficiently for investigations into that conduct to be relevant to demonstrating the witnesses' bias, motive for testifying, or prejudice. Such evidence is not relevant, however, when the conduct and investigations are totally unrelated to the case at bar.[6] Thus, this Court has stated that a trial court "erred in permitting the police officer to be questioned concerning unrelated reprimands." State v. Pettis, 520 So.2d 250, 253-54 (Fla. 1988). Likewise, in A.McD. v. State, 422 So.2d 336, 338 (Fla. 3d DCA 1982), the court held that, although "a disciplinary investigation, concerning prior incidents of excessive force or arising out of the arrest of this defendant, would be relevant[,]... a prior investigation for something remote in time, or unrelated to excessive force would not be relevant."[7] In Morrell, the case that expanded cross-examination of prosecution witnesses in dicta, the court found an undercover agent's becoming involved in police work to prevent criminal charges against himself two years prior to the case at bar irrelevant to show bias. 297 So.2d at 580.
In the instant case the detectives' criminal activities had nothing to do with Breedlove's case. Allowing Breedlove to question the detectives on such matters, at the suppression hearing and at trial, could have done nothing more than raise the possibility that they had engaged in bad acts.[8] "Bias on the part of a prosecution witness is a valid point of inquiry in cross-examination, but the prospect of bias does not open the door to every question that might possibly develop the subject." Hernandez v. State, 360 So.2d 39, 41 (Fla. 3d DCA 1978), cert. denied, 368 So.2d 1367 (Fla. 1979). Evidence of bias may be inadmissible if it unfairly prejudices the trier of fact against the witness or misleads the trier of fact. Therefore, inquiry into collateral matters, if such matters will not promote the ends of justice, should not be permitted if it is unjust to the witness and uncalled for by the circumstances. Wallace.
If the detectives had been formally charged with or tried for the activities Breedlove now complains about and, thus, arguably curried favor by their testimony or if they had been under investigation for police brutality or using excessive force, questions designed to impeach them by showing bias, motive, or prejudice would have been relevant to whether they coerced Breedlove's confessions. In fact, however, the detectives' criminal activities were collateral to any issues in Breedlove's trial, and questions about them would not have promoted the ends of justice. Such questions would not have been permissible, and, thus, there is no reasonable probability that the outcome of the suppression hearing or the trial would have been different. Breedlove, therefore, has also failed to satisfy Brady's materiality requirement, and we affirm the trial court's denial of relief.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] The jury convicted Ojeda of, among other things, conspiracy/racketeering and possession of cocaine with intent to distribute. United States v. Alonso, 740 F.2d 862 (11th Cir.1984), cert. denied, 469 U.S. 1166, 105 S.Ct. 928, 83 L.Ed.2d 939 (1985).
[2] In the first issue Breedlove claimed that he had been absent from a critical portion of his trial. He later abandoned this claim.
[3] Breedlove's trial took place between Feb. 27 and Mar. 5, 1979, with adjudication and sentencing on Apr. 2, 1979.
[4] Such crime must be "punishable by death or imprisonment in excess of 1 year" or must involve "dishonesty or a false statement regardless of the punishment." § 90.610(1), Fla. Stat. (1989).
[5] This extends to situations where charges are no longer pending when the witness testifies, but were dropped in exchange for that testimony. E.g., Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).
[6] In Hernandez v. Ptomey, 549 So.2d 757 (Fla. 3d DCA 1989), the district court held that a defendant should have been permitted to question a police officer about his being under an internal review investigation. The opinion, however, does not state what the defendant was charged with or what the officer was being investigated for. Due to the absence of facts in the opinion, it is impossible to know if the investigation related to the charges against the defendant sufficiently to be relevant. Therefore, we disapprove Hernandez to the extent of conflict with this opinion.
[7] A.McD. had been charged with battery on a police officer and resisting arrest with violence.
[8] We do not address the detectives' right to protect themselves from self-incrimination, but, as the trial court noted, it has been held that, "when the Fifth Amendment guarantee collides with the Sixth Amendment ..., the Sixth Amendment right must yield because to require one to incriminate himself in order to afford help to another would be both unwise and unrealistic." Walden v. State, 284 So.2d 440, 441 (Fla. 3d DCA 1973); King v. State, 525 So.2d 924 (Fla. 3d DCA 1988).