# Third District Court of Appeal

**State of Florida**

Opinion filed October 13, 2016.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D14-2664
Lower Tribunal No. 08-1622

————————————

**Andrew Rolle,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Marisa Tinkler-Mendez, Judge.

Carlos J. Martinez, Public Defender, and Robert Kalter, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Douglas J. Glaid, Senior Assistant Attorney General, for appellee.

Before SUAREZ, C.J., and ROTHENBERG and FERNANDEZ, JJ.

ROTHENBERG, J.

Andrew Rolle ("the defendant") appeals his criminal convictions for first degree murder, attempted first degree murder, and attempted second degree murder on the grounds that the trial court abused its discretion by: (1) permitting the lead detective in the case to testify as to the defendant's guilt; (2) denying the defendant's motion for a mistrial after the State introduced irrelevant information about how one of the detectives in the case was fired after manufacturing evidence in an unrelated case; (3) allowing the State to introduce inadmissible hearsay testimony from two of the victims, and (4) limiting the defense's cross-examination of one of the State's witnesses. For the reasons that follow, we find no abuse of discretion, and thus, we affirm.

## BACKGROUND

The relevant facts on appeal are as follows. On January 8, 2008, an armed assailant shot and killed an off-duty police officer, shot and wounded Wesner Senobi ("Senobi"), and shot at but missed Susie Agenor ("Agenor"). Senobi and Agenor (collectively, "the victims") subsequently identified Ricardo Ajuste ("Ajuste") as the shooter from a photographic lineup. Ajuste was taken into custody, but he was later released after the lead detective, Detective Stein, determined that Ajuste was not the shooter. Upon further investigation, the defendant was arrested, and he was subsequently indicted by the grand jury for first degree murder and two counts of attempted first degree murder.

2

At trial, the State called three witnesses who testified that the defendant admitted to them that he was the shooter. Ryan Stubbs ("Stubbs") testified that he saw the defendant on the day of the shooting. When he saw the defendant, the defendant was upset because someone had stolen his gun. The defendant told Stubbs that he wanted an AK-47 and also needed a ride so that he could retrieve his stolen gun. Stubbs called John Blanchard ("Blanchard"), who owned a white Ford Taurus, to ask him if he would give the defendant a ride. Stubbs left and he did not see the defendant for the rest of the night. The next day, when Stubbs saw the defendant, he told Stubbs that he had shot several people the prior night. He told Stubbs that when he saw the person he believed had stolen his gun, he shot at him several times. The defendant then ran to a car that looked like the one Blanchard was driving and shot the occupant because he believed the occupant was going to shoot the defendant.

The second witness, Blanchard, testified that he gave the defendant and two other individuals a ride to an apartment complex. At the complex, the defendant exited the car, retrieved an AK-47 from of the trunk of the vehicle, and walked away. As Blanchard was driving away from the complex, he heard gun shots. The following day, the defendant told Blanchard that he was involved in the shootings the night before.

The third witness, Norris McDowell ("McDowell"), testified that he had met the defendant in jail. While he and the defendant were talking in the "yard," the defendant told him that he was in jail because he was involved in a shooting while attempting to retrieve his stolen gun.[1]

The defendant's defense at trial was that the detectives had arrested the wrong person and let the real perpetrator, Ajuste, go free. After the State rested, the defense rested without calling any witnesses. The jury found the defendant guilty of first degree murder of the off-duty police officer, attempted first degree murder of Senobi, and attempted second degree murder of Agenor. The trial court sentenced the defendant to life imprisonment for the first degree murder, life imprisonment with a twenty-five-year minimum mandatory sentence for the attempted first degree murder, and thirty years with a twenty-year minimum mandatory sentence for the attempted second degree murder. Thereafter, the defendant filed the instant appeal.

## ANALYSIS

The trial court's rulings on the admissibility of evidence are reviewed for an abuse of discretion, O'Connell v. State, 480 So. 2d 1284, 1286 (Fla. 1985), as are the trial court's rulings on a motion for a mistrial, Anderson v. State, 841 So. 2d 390, 403 (Fla. 2003), and a trial court's determination to limit the scope of cross-

---

[1] During the investigation, the police found an AK-47 and AK-47 bullet casings at the crime scenes.

examination, <u>Tompkins v. State</u>, 502 So. 2d 415, 419 (Fla. 1986). "[D]iscretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." <u>Canakaris v. Canakaris</u>, 382 So. 2d 1197, 1203 (Fla. 1980) (quoting <u>Delno v. Mkt. St. Ry. Co.</u>, 124 F.2d 965, 967 (9th Cir. 1942)).

## I. <u>Detective Stein's testimony regarding the defendant's guilt</u>

The defendant claims that the trial court abused its discretion by permitting the State to elicit Detective Stein's opinion as to the defendant's guilt. Specifically, the defendant contends that Detective Stein improperly commented on the defendant's guilt when he stated that based on his investigation he determined that Ajuste was not involved in the crimes. We find that this issue has not been properly preserved for appeal because the defense failed to articulate the specific legal basis for its contemporaneous objection before the trial court. <u>Chamberlain v. State</u>, 881 So. 2d 1087, 1104 (Fla. 2004); <u>Spann v. State</u>, 857 So. 2d 845, 852 (Fla. 2003); <u>Fleitas v. State</u>, 3 So. 3d 351, 356 (Fla. 3d DCA 2008) (stating that the defendant "failed to state the specific legal ground for the objection that he now raises on appeal," and thus failed to properly preserve the issue for appellate review). However, we additionally conclude that even if the issue had been properly preserved for appellate review, it is without merit.

It is true that a witness's opinion as to the guilt or innocence of the defendant is inadmissible in a criminal case. See, e.g., Martinez v. State, 761 So. 2d 1074, 1079-81 (Fla. 2000) (finding that it was reversible error where the lead investigating officer testified that he had no doubt that Martinez had murdered the victim and the prosecutor compounded the error by arguing in closing arguments that the officer, a witness, and the prosecutor all had no doubt as to Martinez's guilt); Sosa-Valdez v. State, 785 So. 2d 633, 634 (Fla. 3d DCA 2001) (noting that a witness's opinion testimony regarding the guilt or innocence of a defendant is inadmissible, as its probative value is substantially outweighed by the danger of unfair prejudice to the defendant); Henry v. State, 700 So. 2d 797, 798 (Fla. 4th DCA 1997) (finding that it was reversible error for the State to elicit testimony from the victim's mother, who did not observe the offense, that she had no doubt that the defendant was the person who had robbed her son). However, in the instant case, Detective Stein did **not** offer an opinion as to the **defendant's** guilt. Rather, Detective Stein merely explained that although it was initially believed that Ajuste was the shooter, he was ultimately not charged after he was ruled out as a suspect.

> Q:  Now did there come a time that video surveillance from the apartment building was located?
> A.  Yes.
> Q.  Was there video of it?
> A.  Yes.
> Q.  Did it take some time to go through it?
> A.  Yes it did.

6

Q. And [was] the video surveillance looked at prior to Mr. Ajuste being arrested and charged with the attempted murder?

A. No.

Q. Did there come a time when the video was continuing [sic] that you were looking through the video?

A. Yes.

Q. Did there come a time through the investigation that you were looking at other evidence?

A. Yes.

Q. And did you make a determination eventually that Mr. Ajuste was not involved in the case?

A. Yes.

[Defense Counsel]: Objection.

The Court: Overruled.

Unlike the cases cited and others, Detective Stein did not offer an opinion as to the defendant's guilt or innocence. Rather, the record reflects that his testimony was merely an explanation for why the police had released Ajuste. Curtis v. State, 41 Fla. L. Weekly D1363, D1364 (Fla. 4th DCA June 8, 2016) (finding that the lead detective did not impermissibly testify as to his opinion of the defendant's guilt or innocence, but instead "simply explained why the investigation focused on [the defendant] and why certain investigative steps were not taken"). Additionally, by arguing to the jury during opening statements that the police let the real criminal go free and had arrested the wrong person, the defense opened the door for the State to explain why Ajuste was released from custody and not charged in this case. Tosh v. State, 424 So. 2d 97, 98-99 (Fla. 1st DCA 1982) (concluding that the defense had opened the door for the State to elicit testimony as to why it had entered into plea agreements with two key witnesses after the defense attacked the

7

State's motivation in doing so and inferring that the State had entered into these plea agreements in order to frame Tosh). Therefore, we reject the defendant's first argument on appeal.

## II. <u>Disciplinary action against the detective in another case</u>

The defendant also argues that the trial court abused its discretion by denying his motion for a mistrial based on the State's question to Detective Stein implying that the detective who showed the victims the photographic lineup, after which the victims identified Ajuste as their shooter, was fired for fabricating evidence in another case. Specifically, the State asked Detective Stein the following question. "Was [the detective who showed the victims the photographic lineup] fired for creating other evidence in another case?" Before Detective Stein could answer, the trial court sustained defense counsel's objection to this question and gave the jury a curative instruction.

While it is undoubtedly true that testimony regarding the detective's disciplinary history in another case was irrelevant in the instant case, <u>see</u> <u>Breedlove v. State</u>, 580 So. 2d 605, 609 (Fla. 1991), we do not find that the trial court abused its discretion by denying the defendant's motion for a mistrial because the defense counsel's objection to the State's question was sustained before Detective Stein answered the question, and the trial court gave the jury a curative instruction. <u>See</u> <u>Joseph v. State</u>, 704 So. 2d 1149 (Fla. 3d DCA 1998)

8

("[T]he strong curative instruction promptly given by the trial court alleviated any possible prejudice, thus the court correctly denied the mistrial motion.").

### III. **The victim's hearsay testimony**

The defendant contends that the trial court abused its discretion by allowing the State to introduce the objected-to hearsay statements of the victims, Senobi and Agenor, through the testimony of Detective Stein. Specifically, Detective Stein testified that Senobi said that

> [he] was sitting in a car with another person and that a person in dark clothing with a hat on or a skully type hat walked in front of the car and began shooting. Shortly before that a white vehicle with damage to it passed by where they were sitting and the car left in the alley towards the west.

Detective Stein also testified that Agenor's statement to him was "[e]ssentially the same thing that Mr. Senobi said that a vehicle passed by there. It was a Black male dressed in dark clothing produced a AK-47 began to shoot at them while they were in the car."

Although both Senobi's and Agenor's statements qualify as hearsay under section 90.801, Florida Statutes (2013), we conclude that Senobi's statement was properly admitted because it was an "excited utterance," see § 90.803(2), Fla. Stat. (2013) (stating that "[a] statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by

9

the event or condition" is admissible even though it is hearsay), and any error in the admission of Agenor's out-of-court statement was harmless beyond a reasonable doubt. The record reflects that when Senobi was interviewed at the hospital where he was being treated a few hours after the shooting, he appeared to be in pain; and "[h]e was very emotional at times. He would cry at times, he would get angry at times. He was up and down on his emotion." Given our standard of review, we find that a reasonable person could conclude that Senobi was still agitated and traumatized from the shooting while he was being interviewed at the hospital and that he did not have an opportunity for clear reflective thought. Edmond v. State, 559 So. 2d 85, 86 (Fla. 3d DCA 1990) (stating that a witness's emotional description of an assailant made two to three hours after witnessing the crime qualified as an excited utterance).

Although no predicate was laid for the admission of Agenor's out-of-court statement made to Detective Stein, we conclude that its admission was harmless beyond a reasonable doubt. First, the statement was merely cumulative, as Detective Stein testified that Agenor essentially said the same thing as Senobi, which we have already determined was properly admitted under the excited utterance exception to the hearsay rule. Second, both Senobi's and Agenor's statements were also introduced through the testimony of Detective Denham **without objection**, and those statements were nearly identical to the hearsay

10

statements introduced by Detective Stein. We therefore find that any error in the introduction of the objected-to testimony was harmless beyond a reasonable doubt. State v. DiGuilio, 491 So. 2d 1129, 1139 (Fla. 1986).

## IV. The limitation of the defendant's cross-examination of Stubbs

Lastly, the defendant argues that the trial court abused its discretion by limiting the scope of the defense's cross-examination of Stubbs regarding the nature of his pending charges, where such inquiry would have established that Stubbs had a motive to lie in the case. We disagree.

It is well recognized that "[w]hen charges are pending against a prosecution witness at the time he testifies, the defense is entitled to bring this fact to the jury's attention to show bias, motive or self-interest." Breedlove, 580 So. 2d at 608 (quoting Torres-Arboledo v. State, 524 So. 2d 403, 408 (Fla. 1988)). In Bell v. State, 614 So. 2d 562, 564 (Fla. 3d DCA 1993), this Court additionally held that it is also "permissible" to ask the witness to identify the specific pending charges. However, the defendant's right to cross-examination of a witness for bias is not unlimited. Breedlove v. State, 580 So. 2d at (Fla. 1991) (stating that "inquiry into collateral matters, if such matters will not promote the ends of justice, should not be permitted if it is unjust to the witness and uncalled for by the circumstances"); Mosley v. State, 616 So. 2d 1129, 1130 (Fla. 3d DCA 1993).

Based on the facts of this case, we conclude that the trial court did not abuse its discretion by limiting the cross-examination to only preclude the defense from inquiring as to the nature of the pending charges in Broward County. Stubbs testified at trial without objection that: (1) he currently had pending charges in Broward County; (2) the State was not assisting him with his pending charges; and (3) he did not expect to receive anything in exchange for his testimony. The defense was, however, precluded from inquiring into the nature of the pending charges, which was for possession of heroin. The jury, however, also learned that Stubbs had provided his statements to the police in 2008, prior to his arrest for the charges that were pending during the 2014 trial, taken on January 12, 2008, four days after the shooting and a second statement given three months later. The two 2008 statements, which were made prior to his arrest in Broward County, were consistent with each other and with Stubbs's 2014 trial testimony.

However, even if the trial court erred, any error was harmless beyond a reasonable doubt because the defense was permitted to question Stubbs about the pending charges, ask Stubbs whether he had been offered or promised anything in exchange for his testimony, and inquire into whether he expected to receive any benefit for his cooperation with the State. And as already stated, Stubbs had provided two statements to the police in this case in 2008, some six years prior to his trial testimony and prior to his arrest in Broward County for possession of

12

heroin, and these statements were consistent with his trial testimony. Additionally, the State relied on the testimony of: (1) Blanchard, who drove the defendant to the scene of the shooting; watched the defendant as he exited the vehicle and retrieved an AK-47, and heard shots being fired as he drove away, and to whom the defendant admitted being involved in the shootings the following day; and (2) Norris McDowell, who testified that the defendant had confessed to committing the crimes to him in jail where McDowell was being held on misdemeanor prostitution charges. We, therefore, find no reversible error as to this ground raised on appeal.

## CONCLUSION

Because we find that the trial court either did not abuse its discretion regarding any of the above mentioned issues or that if the trial court erred, the error was harmless beyond a reasonable doubt, we affirm. As to any remaining arguments raised by the defendant, we have determined that they are without merit and thus we have declined to specifically address them.

Affirmed.