# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-1834

_____

CAMERON DOMINQUE ROBERTS,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Alachua County.
William E. Davis, Judge.

August 23, 2019

PER CURIAM.

Cameron Dominque Roberts appeals his convictions for robbery with a firearm and possession of a firearm by a convicted felon. Roberts argues that the trial court committed six reversible errors. Finding no merit in any of these arguments, we affirm.

*Facts*

The charges against Roberts arose from a failed drug transaction. Roberts' sister, Ebony Young, arranged to purchase two ounces of marijuana from the victim and agreed on a location to meet the victim. Young arrived at the planned location with Roberts. Roberts and the victim argued over the price and the quality of the marijuana. The argument became physical, and the

victim suffered an injury to his face. Roberts and Young took the marijuana without paying for it and left the area. Roberts was arrested three weeks later.

## *Motions in Limine*

Before trial, Roberts filed two motions in limine. First, he sought to exclude evidence about the circumstances surrounding his arrest. Defense counsel argued that the dramatic circumstances of the arrest, which involved a SWAT team and the Marshals Service, were not relevant to the charges against Roberts and that admission of evidence about the arrest would be highly prejudicial. The State responded that the events surrounding Roberts' arrest were relevant because they showed consciousness of guilt. The court denied the motion.

Second, Roberts sought to prevent law enforcement officers from opining that the injury to the victim's face appeared to have been caused by a strike from the barrel of a shotgun. The State proffered the testimony of Detective Tom Mullins to establish that Mullins had detailed knowledge about shotguns. The trial court denied the motion, ruling that Mullins could testify about the size and shape of the injury, his personal experience with shotguns, and the diameter of the barrels of different gauges of shotguns. But the court barred the prosecutor from asking Mullins if the wound to the victim's face looked as if it had been caused by a strike from the barrel of a shotgun.

## *Jury Selection*

During the selection process, the State asked to use a preemptory strike on Prospective Juror Beckman. Because she was the only African American on the panel, defense counsel asked for a race-neutral reason for the strike. The State responded that it was striking Beckman because she did not understand a hypothetical about the burden of proof and because of her knowledge of marijuana prices. Defense counsel argued that the State's reasons were not genuine because several prospective jurors were knowledgeable about marijuana, including a juror accepted by the State. Defense counsel contended that proper jury instructions on the burden of proof would resolve any confusion

caused by the hypothetical. The State replied that the purpose of the question concerning the burden of proof was to determine whether a prospective juror could follow the example and reach the correct conclusion; Beckman was unable to do so. The trial court found that the State provided a genuine race-neutral reason for the strike.

*Trial*

The victim testified that he had sold marijuana to Ebony Young in the past and that he agreed to sell to her on the day in question. Young arrived at the planned location with an unknown male passenger. After the victim gave Young the marijuana, the unknown male pulled out a shotgun and pointed it at the victim's face. The victim tried to grab the marijuana, but the man hit the victim in the face with the barrel of the shotgun. The victim sustained a cut under his eye from the strike. After the incident, the victim learned that the man with Young was her brother, Cameron Roberts.

On cross, the victim denied owning any firearms. He also testified that he agreed to enter a no contest plea for his probation violation in exchange for the State dropping three felony charges against him. When defense counsel sought to elicit testimony about the dropped charges, the prosecutor objected. Defense counsel argued that the nature of the offenses was relevant because the victim denied owning any firearms, yet he was arrested for carrying a concealed firearm. The court found that the victim's arrest for a firearm offense was not relevant because it occurred five days after the robbery.

Detective Tom Mullins testified that he had professional training and experience with firearms over the past twenty-two years of his law enforcement career. He also had personal experience with firearms because he started hunting at a young age and owned several firearms. During an interview with the victim nine days after the robbery, Mullins observed the injury to the victim's face. He also reviewed photographs of the injury taken on the night of the robbery. Mullins described the injury as semi-circular, like an arc. He explained that the diameter of a twelve-gauge shotgun barrel was roughly the size of a nickel or just under

3

three-quarters of an inch and that the diameter of the barrel would increase or decrease based on the gauge of the shotgun. Mullins clarified that he could not say that a shotgun caused the victim's injury.

The State then called Ebony Young. Young remembered a "stick-like figure" by Roberts' seat on the night in question. She recalled that Roberts asked questions about the victim during the drive, but she testified that she could not remember the details of their conversation. The prosecutor tried to refresh her recollection by using her sworn statement, but Young insisted that she did not remember what was said. Young agreed that her memory was better when she gave a sworn statement at the prosecutor's office ten days after the robbery, and she agreed that the statement she gave then was truthful. Over defense counsel's objection, the trial court allowed the prosecutor to read the portion of Young's recorded statement where she attested that Roberts had asked if the victim was the type of person Roberts could "jack."

The prosecutor also tried to refresh Young's recollection about the "stick-like figure" Roberts had with him in the car that night, but Young testified that reviewing her statement did not help her recall the information. Young remembered telling the prosecutor that Roberts used a shotgun, but she did not actually remember seeing a gun. She just assumed that the "stick-like figure" she had seen in the car was a shotgun when the police told her they were investigating an armed robbery. She claimed that she was not truthful when she referred to the "stick-like figure" as a shotgun in her statement because she was not sure it was a shotgun.

Young testified that after the victim gave Roberts the marijuana, Roberts pulled out the object he had with him, but she "kind of blacked out" while Roberts and the victim fought. Again, reviewing her previous statement did not refresh Young's recollection, so the prosecutor read the portion of her past statement in which she repeatedly stated that Roberts had a shotgun that night. Young did not contest the fact that she once told the prosecutor, "I never really saw it up close, but I do know it was a shotgun." Young explained that she believed that parts of her previous statement were true and parts were untrue, but she could not point to the untrue parts.

4

Investigator David Sanders with the U.S. Marshals' fugitive task force provided testimony concerning Roberts' arrest. Sanders and his team surrounded the apartment building where Roberts was located and used loud speakers to order Roberts out of the apartment. The announcements continued for several hours with no response from Roberts. Eventually, Ebony Brown, Roberts' girlfriend, exited the apartment and confirmed that Roberts was inside. The team continued with the announcements for some time, but Roberts never left the apartment. SWAT was not called until after Sanders' team spent a couple of hours trying to convince Roberts to leave the apartment. SWAT made a few more announcements before throwing tear gas into the apartment. Still, Roberts refused to leave the apartment and did not leave until his mother arrived.

Roberts testified on his own behalf. He denied having any weapons on his person when he and Young went to meet the victim. During the transaction, Roberts noticed that the marijuana was not the type he had requested, and he and the victim argued about the quality of the product. Roberts claimed that the victim became belligerent when Roberts tried to renegotiate the price, and the victim stabbed Roberts' hand. Roberts hit the victim a couple of times with his elbow before he and his sister left the area. Roberts stated that he did not immediately leave the apartment when the police arrived because the police announced that they could not ensure his safety and he feared for his life. He did not leave the apartment until his mother arrived and told him that it was safe.

During the State's rebuttal closing argument, the prosecutor argued that the jury should not place much weight on Roberts' statement to the police about injuring his hand because the statement was made three weeks after the robbery. The prosecutor stated, "It would be one thing if Mr. Roberts had, you know, contacted law enforcement the night this happened and said, hey, I was the victim. Look, I got cut in the hand, and they can document that." Defense counsel argued that the prosecutor was engaging in burden shifting because the argument implied that Roberts had an obligation to put on some proof. The trial court overruled the objection. The prosecutor argued that Roberts'

5

story about injuring his hand was not credible because any injury was not reported until three weeks after the robbery.

The jury found Roberts guilty of robbery with a firearm and possession of a firearm by a convicted felon. This appeal follows.

*Analysis*

Roberts argues that the trial court erred in six respects: (1) by allowing the State to exercise a peremptory challenge on the sole African-American prospective juror; (2) in limiting the cross-examination of the victim; (3) by allowing Detective Tom Mullins to give lay opinion testimony; (4) in denying a motion in limine that sought to exclude evidence of the circumstances surrounding his arrest; (5) in allowing the State to admit a past recorded recollection.; and (6) in overruling defense counsel's objection to a statement made during rebuttal closing arguments.

*Peremptory Challenge*

The State provided two race-neutral reasons for striking Prospective Juror Beckman: (1) Beckman did not understand the State's burden of proof; and (2) Beckman was familiar with marijuana, including the pricing of marijuana. Roberts argues that these reasons were not genuine because the reasons applied equally to other prospective jurors, but the State sought to exclude only Beckman, the sole African-American juror. Using a peremptory challenge on a prospective juror who is a member of a distinct racial group when the proffered reason applies equally to a prospective juror who is not a member of a distinct racial group can be racially discriminatory. *Hunter v. State*, 225 So. 3d 838, 839 (Fla. 4th DCA 2017). However, that is not what occurred here.

During jury selection, the prosecutor used a hypothetical to explain the concept of burden of proof to the jury. The prosecutor asked the jury panel to believe that it was illegal to possess a blue pen and that the elements of the crime were that the pen was blue and that the accused possessed the pen. When the prosecutor asked if proof of the brand of the pen would affect her verdict, Beckman responded that she would look at both sides of the story and consider the evidence before reaching a verdict. Beckman,

6

along with a few other jurors, did not immediately understand from the hypothetical that the State's burden was limited to proving the elements of the charged crime. The record shows that none of the other jurors confused by the hypothetical served on the jury.

The State's second reason for excluding Beckman was based on her knowledge of marijuana. When asked about what she knew about marijuana, Beckman responded, "I've seen it, smelled it, somewhat the value." She believed that the value was determined by ounces, but later explained that she did not really understand the valuation because it involved a lot of math. Jurors West, Rodriguez, and Willis, who served, stated that they had seen and smelled marijuana, but they did not know its value. Juror Whyte testified that her knowledge was limited to the appearance of marijuana. Unlike West, Rodriguez, Willis, and Whyte, Beckman had some knowledge—however limited—concerning the value of marijuana.

Because our review of the record shows that the State's reasons for striking Beckman were race-neutral, the trial court did not abuse its discretion in permitting the State to strike Beckman from the jury panel. *See Johnson v. State*, 238 So. 3d 726, 740 (Fla. 2018).

*Cross-examination*

Next, Roberts argues that the trial court impermissibly limited his ability to cross-examine the victim about (1) the State charging the victim with crimes involving firearms several days after the armed robbery occurred, (2) the victim's admission during a police interview that he possessed a firearm when he was arrested on the new charges, and (3) the State's decision to drop those charges despite the victim's confession. Based on our review of the record, we find no error by the trial court in limiting the cross-examination of the victim.

A defendant has the right to conduct a full cross-examination of a witness, especially when the witness being examined is a key witness for the State. *Docekal v.* State, 929 So. 2d 1139, 1143 (Fla. 5th DCA 2006). A permissible subject of cross-examination is

7

whether the witness is biased or has an interest in the outcome of the case. *Id.* For example, a witness may be questioned about whether he has or had charges pending against him:

> It is well-settled that "if a witness for the State were presently or recently under actual or threatened criminal charges or investigation leading to such criminal charges, a person against whom such witness testifies in a criminal case has an absolute right to bring those circumstances out on cross-examination or otherwise so that the jury will be fully apprised as to the witness' possible motive or self-interest with respect to the testimony he gives."

*Fajardo v. State*, 193 So. 3d 1019, 1024-25 (Fla. 4th DCA 2016) (quoting *Morrell v. State,* 297 So. 2d 579, 580 (Fla. 1st DCA 1974)).

But there are limits on a defendant's right to cross-examine a witness about bias. *Breedlove v. State*, 580 So. 2d 605, 609 (Fla. 1991). "Evidence of bias may be inadmissible if it unfairly prejudices the trier of fact against the witness or misleads the trier of fact. Therefore, inquiry into collateral matters, if such matters will not promote the ends of justice, should not be permitted if it is unjust to the witness and uncalled for by the circumstances." *Id.*

Here, defense counsel elicited some testimony from the victim showing his potential bias: the victim testified that he was arrested for three third-degree felonies, the State did not prosecute him for those charges, and the State had not promised him anything in exchange for his testimony. As a result, defense counsel showed that the victim could have a motive for testifying against Roberts.

The trial court's ruling limiting the cross-examination of the victim and barring defense counsel from asking about the nature of the charges against the victim prevented the jury from being misled. One of the issues disputed at trial was whether the victim was armed during the drug deal. Had the jury learned that the victim was arrested for carrying a concealed firearm, the jury may have been misled into believing that the victim's arrest five days after the robbery was evidence that he possessed a gun during the

8

robbery. Considering the passage of time between the robbery and the victim's arrest, the trial court did not abuse its discretion by preventing defense counsel from asking the victim about the exact nature of the dropped charges. *Chambers v. State*, 200 So. 3d 242, 246 (Fla. 1st DCA 2016).

### *Lay Opinion Testimony*

Roberts also contends that the trial court erred when it allowed Detective Mullins to offer impermissible lay testimony. A lay witness cannot testify about an inference or opinion because it invades the province of the jury. *Johnson v. State*, 252 So. 3d 1114, 1116 (Fla. 2018). Our review of the record shows that Detective Mullins limited his testimony to his observation of the victim's wound nine days after the robbery, his viewing of photographs of the victim's wound on the night of the robbery, his observation that the victim's wound was a certain size, and his assertion that the barrel of a twelve-gauge shotgun was a certain size. Mullins did not offer an opinion about the cause of the victim's wound; his testimony was limited to his personal observations and knowledge. Mullins did not testify that he believed that a shotgun caused the injury to the victim's face. Rather, he testified that he was unable to reach such a conclusion. For these reasons, the trial court did not abuse its discretion by allowing this testimony. *McCray v. State*, 919 So. 2d 647, 649 (Fla. 1st DCA 2006).

### *Circumstances Surrounding the Arrest*

Roberts argues next that the trial court erred in denying his motion in limine to exclude evidence surrounding his arrest because the evidence was unduly prejudicial and did not reflect a consciousness of guilt. Evidence of flight and resisting lawful arrest are admissible to show consciousness of guilt if there is a nexus between the flight or concealment and the crimes for which the defendant is being tried. *Twilegar v. State*, 42 So. 3d 177, 196 (Fla. 2010). The significance of evidence of flight is weakened:

> 1) if the suspect was unaware at the time of the flight that he was the subject of a criminal investigation for the particular crime charged; 2) where there were not clear indications that the defendant had in fact fled; or,

3) where there was a significant time delay from the commission of the crime to the time of flight. The interpretation to be gleaned from an act of flight should be made with a sensitivity to the facts of the particular case.

*Id.* (quoting *Bundy v. State*, 471 So. 2d 9, 21 (Fla. 1985)).

Here, the prosecutor presented testimony that Roberts knew that a warrant was out for his arrest. Young told Roberts that she had informed law enforcement that Roberts had a shotgun during the robbery. The officers seeking to make the arrest announced on loud speakers that they were there to execute a warrant. Roberts admitted that he heard the announcements. Rather than exit the apartment, Roberts chose to hide in the apartment for hours—even after tear gas was launched inside the apartment. Based on this record, the trial court did not abuse its discretion when it concluded that the probative value of the evidence of the circumstances surrounding the arrest outweighed its prejudicial effect. *Patrick v. State*, 104 So. 3d 1046, 1056 (Fla. 2012).

*Past Recorded Recollection*

Next, Roberts argues that the trial court erred by allowing the prosecutor to impeach Young by using her past recorded recollection because there was insufficient testimony that Young believed that her past statement was accurate.

Section 90.803(5), Florida Statutes (2017), defines a past recorded recollection as:

A memorandum or record concerning a matter about which a witness once had knowledge, but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. A party may read into evidence a memorandum or record when it is admitted, but no such memorandum or record is admissible as an exhibit unless offered by an adverse party.

10

A witness's testimony about the accuracy of the statement is essential to the admission of the evidence. *Polite v. State*, 116 So. 3d 270, 275 (Fla. 2013). "If the witness is unable to adequately recall making the record, the witness may nevertheless verify the record or memorandum by testimony that: (1) although the witness does not recall the statement, the witness has a habit of recording such matters correctly or (2) the witness believes the statement is correct because the witness would have been truthful in providing the statement." *Id.* at 279.

Ten days after the robbery, Young appeared at the prosecutor's office and gave a sworn statement. She agreed that her memory about the robbery was better when she gave the statement ten days after the robbery than it was at trial. She also agreed that she was truthful when she gave the statement. Young later gave the caveat that her statement was truthful, except when she said that Roberts had a shotgun on the night of the robbery.

Young's testimony laid a sufficient foundation for the admission of her past statement. *Blount v. State*, 152 So. 3d 29 (Fla. 1st DCA 2014). Admission of a past recorded recollection of a witness is proper when the witness's trial testimony shows: the witness does not remember the events surrounding the shooting, the witness once had this knowledge, the witness described the events in a sworn statement while they were fresh in the witness's mind, and the witness was telling the truth when the sworn statement was provided. *Id.* at 30. Young's testimony at Roberts' trial satisfied each of these requirements. Thus, the trial court did not abuse its discretion by allowing the prosecutor to present Young's past recorded recollection. *McCray*, 919 So. 2d at 649.

*Closing Arguments*

Finally, Roberts argues that the trial court erred in overruling his objection to the prosecutor's comment that the jury should not place much weight on Roberts' claim about injuring his hand during the robbery because Roberts did not mention this injury until he was arrested three weeks later.

The State may not comment on a defendant's failure to produce evidence because such comments may cause the jury to believe that the defendant has the burden of introducing evidence. *Jackson v. State*, 575 So. 2d 181, 188 (Fla. 1991). But a prosecutor's comments are not considered impermissible burden-shifting when the comments are invited by defense counsel's closing argument. *Scott v. State*, 66 So. 3d 923, 930 (Fla. 2011). A prosecutor may comment on the credibility of a defendant when the defendant testifies and when the prosecutor limits the comment to facts that are in record or may be reasonably inferred from the record. *Gale v. State*, 483 So. 2d 53, 54 (Fla. 1st DCA 1986).

Contrary to Roberts' assertion, the prosecutor did not engage in burden shifting. Defense counsel argued during closing that Roberts' testimony about the victim injuring Roberts' hand during the drug deal was believable because it was corroborated by Young's and Mullins' testimony. In response, the prosecutor argued that neither Young's nor Mullins' testimony supported Roberts' claim that he sustained an injury during the altercation. Thus, the prosecutor's comments were invited by defense counsel's argument.

### *Conclusion*

Because we find no reversible error, we AFFIRM the court's imposition of judgment and sentence.

ROWE, JAY, and M.K. THOMAS, JJ., concur.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

Andy Thomas, Public Defender, and M. J. Lord, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Julian E. Markham, Assistant Attorney General, Tallahassee, for Appellee.